Good morning, your honors, and may it please the court, my name is Bob Palmer, and I'm representing the appellant Tommy Tran in this case. The issue before this court is whether a low-level supplier in an extensive, multi-state conspiracy to distribute drugs qualifies as an organizer, leader, manager, or supervisor of the conspiracy. I have to admit this is a difficult argument because there is no definition in the statutes of what is an organizer, leader, supervisor, or manager. Instead, the Commentary Note 4 sets forth seven factors that distinguish between manager and supervisor and organizer and leader. That doesn't really help in determining what is a manager or a supervisor. What's even more difficult in this case is the fact that this is undisputedly a very extensive conspiracy. It covers areas between California and Illinois. There were several suppliers in the conspiracy. The pre-sentence report names numerous people involved in the conspiracy, yet the enhancement in this case is under Section 3B11C, which is for a conspiracy of less than five. The question is, why would the government do this? I submit that my interpretation of what the government has done in this case is they knew that trying to convince any court that the limited activities Tommy Tran had in this conspiracy would rise to the level of being an organizer or leader. Section 3B11C in the background section of the statute says, In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership and that of management or supervision is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of Section 3B11C. So they couldn't prove he was any of these enhanced participants under a larger conspiracy, so they tried to go under a smaller conspiracy, which the evidence doesn't support in any way, and tries to mash them all together and say it's not of any significance. But it is of significance in this case because it was a two-level enhancement of his sentence. Which is the lowest number of levels in that guideline. I mean, if you qualify for the other parts, it's more. Correct. Correct. Yes, Your Honor. I mean, the government does argue that he is engaged in significant activities. Some decision-making authority, he's recruiting some accomplices, he's earning significant money, plans and organizes these shipments. That's the end of the conspiracy where he's operating. Yes, Your Honor. And to be honest with you, I was surprised at the arguments that the government made. For example, they argue in their brief that Mr. Tran's attorney conceded that he recruited, that Mr. Tran recruited accomplices. That's not true. There's nothing in the record about him recruiting. I'm sorry, because on page 23 of the sentencing transcript, it did appear, I thought, that counsel conceded that although Tran didn't recruit others to sell the drugs, he did recruit others to distribute the drugs or put them in the mail. Am I off? No, Your Honor. That's correct. The situation was simply that Mr. Davis, who took over leadership of the criminal enterprise in 2016, I believe, he would go to or contact Tran, tell him what drugs that he needed. Tran would gather the drugs with the three people identified that they say he recruited. They would gather the drugs, send them to Davis. Davis would send the money back, and that was it. It was nothing that Tran had any control over as far as what drugs were requested, what the payments were made. Was anything other than Tran keeping a ledger of payments for the conspiracy? Your Honor, there's no evidence of that. There is evidence that Mr. Tran had the notebook that listed the transactions, but that has nothing to do with actual control or leadership or recruiting of any of the people involved. If I could get back to my point about the government saying that Mr. Page conceded that Mr. Tran recruited people, it's not in the record. In the addendum to the proof sense report, Mr. Page represented on behalf of Mr. Tran that there was no recruitment. In the sentencing transcript, page 8 of the sentencing transcript through I believe it's page 11 of the sentencing transcript, Mr. Page, who represented Mr. Tran, specifically says, there was no recruitment. I believe his exact words were, let me say it. There was no recruitment. And then the government's attorney gets up and on the very next page says, Mr. Page concedes there was recruitment. Where did that come from? And then it translates into the brief somehow. There is no evidence of recruitment. I feel a bit like Justice Stewart many years ago saying, I don't know what obscenity is, or I can't define obscenity, but I know it when I see it. And I feel that way about this case. I don't know the definitions of organizer, leader, manager, or supervisor, but I know it when I see it. And more importantly, I know it when it's not there. Our reply brief, which I must give credit to my law student because he did the reply brief, picks apart the government's argument point by point with references to the record for each point. Obviously, it's far too extensive to go into all the details here, but I'd like to give you a couple of examples. At one point, the government cites a letter from Kelvin Hang to Judge Myerscough. And the government says, it quotes, he has always taken care of me. I don't know if they're using that as recruitment or as some kind of leader over Hang or what, but that's only part of the sentence. No, you furnished the full quote in the report. Correct. That's just an example of how things are parsed to make it appear something that it's not. So, I'll hold off on the other quotes because I would like to save a few seconds for rebuttal, but unless the court has questions. That's fine. Thank you. Thank you. Ms. Seaburger. May it please the court, counsel, my name is Sarah Seaburger and I represent the government in this matter. Organizers, leaders, managers, and supervisors, they tell people what to do, they tell people when to do it, they tell people how to do it, and then they decide if it's done right. Tommy Tran planned drug shipments and payments, coordinated drug amounts and sales price, determined who would ship drugs and receive payments. And yes, he had three subordinates who he knew, they were his people, that he used to help him with that process. Tommy Tran and Mr. Davis worked together to lead their drug conspiracy to profit. The defendant... You've asserted that he recruited controlled exercise decision-making authority over the three California subordinates. And, of course, Mr. Tran asserts that the government has overstated the record on these points. What in the record supports each of these assertions? For instance, what's the best evidence of recruitment? Where will I find page sites for the best evidence of recruitment of control of decision-making authority? Where will we find the page sites for these? Yes, Your Honor. If I could start first by sort of following up on your earlier question of opposing counsel concerning the record at the sentencing hearing. I'd first direct the court to page 9 of the sentencing hearing transcript in which Mr. Page says, we can see that he did have individuals pick up payments from time to time. And then Your Honor pointed out page 23 later on, I understand that he recruited them to distribute or put them in the mail, but not to the extent of the network as Mr. Davis had. I would also, just as it relates to this, direct the court to a number of paragraphs in the PSR. One in particular that I think stands out in terms of control and sort of who's running things is paragraph 67. There's a conversation between Tran and Mr. Davis in which Mr. Davis talks about setting up the purchases, arranging a money shipment, and it's pretty clear that Mr. Davis has no real idea who these three people are who are then receiving money, which I think lends itself to a very solid inference that Mr. Tran is in charge. I would also note that paragraph 29 identifies Ms. Quach and Mr. Hang as merely couriers. There is another paragraph, I believe it's 38, that talks about collecting money, and Mr. Tran goes with Mr. Hang to collect his particular payment. There's also in the PSR language concerning the fact that Mr. Davis explains in paragraph 47 and then into 48 that Mr. Tran is his partner, which also lends itself to the inference that the other three couriers report then to Mr. Tran. In paragraph 70 of the PSR, it reports Mr. Hunt's, I believe, car at Mr. Tran's house. Paragraph 68, Mr. Tran and Mr. Davis talk about new lines of supply. These aren't conversations that are occurring with the three subordinates. And what I think is clear from looking at the PSR, which I will note uses language like Mr. Tran used the three. He directed the three. I recognize it doesn't specifically use the word recruited, but I think it is a reasonable inference that the court drew when you see that these people are not involved in this but for Mr. Tran. These are Mr. Tran's people. It was his girlfriend. It was his longtime friend, which is part of why the government, both in the district court and then in our brief, noted that letter. The letter's important for their relationship. Mr. Hang isn't involved in this, but for Mr. Tran's role in using him as sort of a cutoff man in collecting the money and helping him making those payments. I think that the point is that those are individuals who reported to Tran. He told them what to do. He got the information about where the payments would be, when to pick them up, and then delegated to his subordinates. And then, Judge, as you talked about, he was the one then keeping records of how much money came in. He was the one who had the ledger about how much money was coming in and what they were selling, which that, I think, also points to the fact that he is a leader as it relates to those three California subordinates. I think this also comes back to what we're looking at here is really a function in some ways of kind of common sense. Counsel talked about, I know it when I see it. We know who a supervisor is. Sometimes a supervisor is, yes, a middle manager, and perhaps that's a more accurate label for Mr. Tran, but he certainly was a manager in this conspiracy in that he had three people underneath him who he told what to do, where to go, and when to do it. What evidence supports the government's assertion that Mr. Tran directed anyone to mail a particular package? Does the government mean one of the intercepted Missouri packages, some other packages? Where in the record will we find that? I recognize that the PSR focuses primarily on the receiving, and I apologize that I'm failing to point out the specific paragraph in the PSR at this point in time, but there is a, I feel pretty confident in saying, and this is where I believe the PSR uses the word at his direction, that there is a paragraph which talks about how it was shipped by Tran or at Tran's direction. Maybe 62 of the PSR? Thank you so much, Your Honor. It is paragraph 62, which talks about agents knew a package was shipped at Tran's direction, either by Tran or one of his associates from California to the Monroe City location. Judge, I think the issue is that the defense seems to be saying there has to be more than what was presented, and the government's position here is really this is enough. This is the lowest level, as the court pointed out, and I do not think this is some sort of scenario where the government selected that particular, to support that particular enhancement just because we felt it was so much of a stretch in and of itself. There is plenty of evidence in the record that Mr. Tran both shared some sort of role, both as it relates to the overall conspiracy in working as a partner with Mr. Davis, but more importantly and more clearly that he was in charge of those three subordinates in California. There are cases, yes, that have different and other facts, but what these cases really tell us to, the salient point is that this comes down to a common sense approach in terms of did he have some authority and control over someone else? Did he have, relative to other people, that responsibility, role, and status? And the issue here is whether or not the court committed clear error in finding, as the government argued, that he did. And I think the record is, I think there is plenty of evidence here, and I don't believe that the court, there is some sort of clear conviction that a mistake has been made in this case, such that the district court should be overturned. So the government would ask the court to affirm the judgment. I would just like to make one last point. I think counsel, that I think is important here, based on the reply brief, at no point in time has Mr. Tran challenged the facts in the PSR. There's some 50 paragraphs. That's not what the objection was. The objection is just the application. So the conclusions and facts in the PSR and elsewhere, those, in fact, are the facts that this court can rely on. And if there are no further questions, again, would ask the court to affirm. Thank you. Thank you. Mr. Coleman. Just briefly, Your Honors. Mr. Tran didn't challenge the facts because the facts don't support the finding that he is an organizer, leader, manager, or supervisor. If you, again, read the reply brief, look at the citations in the reply brief, patch them up with the citations to the record in the government's brief, you will see, using a common-sense approach, that Mr. Tran does not qualify for the two-level enhancement. I'd also like to take my last 11 seconds. And, Judge Shrovener, if you don't believe I'm pandering to the court, I'm happy to see you back on the bench. It's been several years since I've argued in front of you. It's a pleasure to do so again. I'm very, very happy to see you as well. I really am very happy. Thank you, Your Honor. Thank you. Our thanks to both counsel. The case is taken under advisement. And, Mr. Palmer, thanks to your students as well. I think you had just one student on this case. Thanks to your student as well. All right. We'll move to the next case this morning, the United States against Davis. Robert Davis. Different Davis. Last one was Sean. And, Mr. Cohn, whenever you're ready. Thank you, Your Honor. Good morning. May it please the court.